UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DAVID ABRAMS,

       *Plaintiff*,                                          17 CV 6555

    *v*.

                                                       **COMPLAINT**

PAYAM INC., *d/b/a* COLBEH RESTAURANT,

       *Defendant*.
------------------------------------------------------------------------x

       Plaintiff David Abrams, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendant Payam Inc., d/b/a Colbeh Restaurant, as follows:

## PRELIMINARY STATEMENT

       1.     Plaintiff David Abrams was employed as an Executive Chef by Defendant Payam Inc., d/b/a Colbeh Restaurant ("Colbeh").  Colbeh operates several restaurant locations in the New York City metropolitan area, serving kosher food, Persian cuisine, and sushi.  Mr. Abrams worked at Colbeh's 32 West 39th Street, New York, New York restaurant location.

       2.     Plaintiff seeks damages and costs against Defendant for failing to provide him with the required notice of his right to continued health care coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161.

       3.     Plaintiff also seeks damages and costs against Defendant for failing to pay him his wages and earned commissions, in violation of the New York State Labor Law ("NYLL"), N.Y. Lab. Law § 191.

       4.     Plaintiff also seeks damages and costs against Defendant for terminating his employment in retaliation for his complaints of Defendant's wage and hour violations, in violation of NYLL § 215.

5. Plaintiff also seeks damages and costs against Defendant for breach of contract, in violation of the New York State common law.

## JURISDICTION AND VENUE

6. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under COBRA.

7. Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiff's NYLL and common law claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

8. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## PARTIES

9. Mr. Abrams, at all times relevant hereto, was and is a resident of Suffolk County in the State of New York.

10. Upon information and belief, at all times relevant hereto, Colbeh was and is a corporation organized under the laws of the State of New York with restaurant locations at 32 West 39th Street, New York, New York 10018 in New York County; 75 North Station Plaza, Great Neck, New York 11021 in Nassau County; and One The Intervale, Roslyn, New York 11576 in Nassau County.

## STATEMENT OF FACTS

11. Mr. Abrams is a 49-year-old man with decades of experience in the food service and hospitality industries.

12. In and around April 2016, Greg Lodato, Colbeh's General Manager, reached out to Mr. Abrams concerning the Executive Chef Position at Colbeh, as the two had known each other previously and Mr. Lodato believed that Mr. Abrams could help Colbeh grow and expand.

13. Mr. Lodato sought Mr. Abrams's assistance in overhauling Colbeh's menu and attempting to revitalize the existing restaurants and expand to additional locations.

14. In an effort to persuade Mr. Abrams to work for Colbeh, Greg Lodato offered Mr. Abrams a weekly salary of $800.00, plus a commission of 0.5% of total sales, 50% of the *maitre'd* fee on private events, and a percentage of Colbeh's Roslyn location's sales.

15. Mr. Lodato estimated that Mr. Abrams would earn approximately $600 per week in commissions and stated that Mr. Abrams could expect to earn an annual salary in excess of $80,000.

16. Mr. Lodato also stated that Colbeh would provide Mr. Abrams with health insurance.

17. Relying on Mr. Lodato's representations, Mr. Abrams agreed to accept the executive chef position with Colbeh.

18. Mr. Lodato memorialized this agreement in a letter to Mr. Abrams dated April 26, 2016.

19. As a result, Colbeh hired Mr. Abrams as an Executive Chef/General Manager in and around April 2016.

20. Mr. Abrams began working for Colbeh in and around May 2016.

21. Mr. Abrams was told that he would be working out of Colbeh's Roslyn location; however, apart from a few days spent at the Roslyn location, Mr. Abrams worked out of Colbeh's Manhattan location.

22. Throughout Mr. Abrams's employment at Colbeh, he diligently performed the job duties of the Executive Chef position as well as General Manager duties, often working long hours at Colbeh's restaurants.

23. Despite Mr. Abrams's hard work, Colbeh routinely paid Mr. Abrams late; Mr. Abrams was to be paid every Friday, but Colbeh frequently would not deliver Mr. Abrams's pay until the following week.

24. When Mr. Abrams did receive his weekly salary, it was inconsistent; some weeks Colbeh would pay Mr. Abrams the entire weekly salary via check, while other weeks Colbeh would only pay Mr. Abrams part of his weekly salary and pay him in cash.

25. As a result, Colbeh routinely underpaid Mr. Abrams and often failed to make up that shortcoming.

26. In addition, Mr. Abrams often received no commission whatsoever, even though the restaurants had made sales and these commissions were earned and owed to him.

27. Mr. Abrams repeatedly complained to Mr. Lodato about Colbeh's failures to pay him his wages and earned commissions.

28. In response, Mr. Lodato would belatedly pay Mr. Abrams some, but not all, of what he was owed, and promise that it would not happen again.

29. In and around November 2016, Colbeh again failed to pay Mr. Abrams on time.

30. Unsatisfied with Mr. Lodato's and Colbeh's failure to resolve the recurring problem, Mr. Abrams reached out to Colbeh's owner and general manager, Pejman Toubian, and complained to him directly about Colbeh's failure to timely pay his wages and commission.

31. Within days of this complaint, on or about November 7, 2016, Colbeh abruptly terminated Mr. Abrams's employment without explanation.

4

32. Subsequent to Mr. Abrams's termination, Colbeh failed to send him the requisite COBRA election notice.

33. Colbeh was obligated to send Mr. Abrams a COBRA election notice within 30 days of the termination of his employment, but did not do so.

34. Mr. Abrams and his family members were enrolled in health insurance through Colbeh.

35. Colbeh's unilateral termination of Mr. Abrams's insurance and its failure to send Mr. Abrams a COBRA election notice left Mr. Abrams and his family members uninsured and forced Mr. Abrams to pay out-of-pocket for medical expenses.

36. In and around February 2017, after being repeatedly contacted concerning its COBRA violations, Colbeh offered to restore Mr. Abrams to its insurance plan for a brief period of time, in order to allow Colbeh to re-remove him from its plan and issue a proper COBRA election notice.

37. In and around March 2017, Colbeh removed Mr. Abrams from its insurance plan for a second time.

38. However, at that time, Colbeh sent Mr. Abrams a letter dated March 8, 2017, stating that, as of March 1, 2017, Mr. Abrams's medical coverage "has been moved to COBRA coverage," and instructing Mr. Abrams to send a monthly premium check to Colbeh by March 15, 2017.

39. In this letter, Colbeh informed Mr. Abrams that if he did not pay them by March 15, 2017, his insurance would be terminated.

40. In doing so, Colbeh again failed to offer Mr. Abrams the appropriate COBRA notice, and failed to extend to him the required 60 days for election.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
**Violation of the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161**

41. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 40 with the same force as though separately alleged herein.

42. COBRA requires that an employer issue an election notice to qualifying employees within a set period of time after a triggering event, such as termination.

43. Plaintiff and his family members were enrolled in health insurance through Defendant's insurance plan.

44. Defendant terminated Plaintiff's employment on or about November 7, 2016.

45. Defendant failed to issue Plaintiff the requisite election notice after terminating his employment.

46. As such, Defendant has violated COBRA.

47. Further, COBRA requires that an employer allow employees and/or former employees a certain amount of time to elect COBRA benefits.

48. Defendants failed to grant Plaintiff the requisite period of time to elect COBRA benefits.

49. As a direct and proximate consequence of Defendant's actions, Plaintiff has suffered, and continues to suffer, substantial damages, including actual economic damages and statutory damages, all in amounts to be determined at trial.

## SECOND CAUSE OF ACTION
**Failure to Pay Wages in Violation of NYLL § 191**

50. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 49 with the same force as though separately alleged herein.

51. At all times relevant to this action, Plaintiff was employed by Defendant within the meaning of the NYLL.

52. NYLL § 191(d) mandates that employees be paid in accordance with the agreed terms of employment.

53. The terms of Mr. Abrams' employment with Colbeh required him to be paid on a weekly basis.

54. Defendant frequently failed to timely pay Plaintiff.

55. Plaintiff properly complained to Defendant about Defendant's failure to pay wages and commission, as well as Defendant's failure to pay Plaintiff within the agreed-upon schedule.

56. Defendant therefore was aware of its obligation to pay Plaintiff his wages.

57. To date, Defendant has still failed to pay Plaintiff the entirety of his wages and commissions due.

58. Defendant knowingly and willfully violated Plaintiff's rights under the NYLL by failing to pay Plaintiff for his hours worked.

59. Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant his unpaid compensation, liquidated damages, reasonable attorneys' fees, costs, and interest related to the action.

**THIRD CAUSE OF ACTION**
**Retaliation in Violation of the NYLL**

60. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 59 with the same force as though separately alleged herein.

61. The NYLL prohibits an employer from retaliating against an employee for opposing practices unlawful under the NYLL.

62. Plaintiff properly complained to Defendant about Defendant's failure to timely pay him his wages, Defendant's failure to pay him his weekly wage, and Defendant's failure to pay him his earned commissions.

63. Defendant retaliated against Plaintiff by terminating his employment.

64. As such, Defendant violated the NYLL.

65. As a direct and proximate consequence of Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

### FOURTH CAUSE OF ACTION
### Breach of Contract in Violation of the New York State Common Law

66. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 65 with the same force as though separately alleged herein.

67. Plaintiff and Defendant entered into a contract which contained provisions requiring Defendant to pay Plaintiff a weekly salary of $800.00, plus a commission of 0.5% of total sales, 50% of the *maitre'd* fee on private events, and a percentage of Colbeh's Roslyn location's sales.

68. Defendant breached its contract with Plaintiff by willfully failing to pay Plaintiff in accordance with these provisions.

69. By reason of its breach of contract, Defendant is liable to Plaintiff for an amount to be determined at trial, plus interest.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial;

C. For the third cause of action, damages to be determined at trial;

D. For the fourth cause of action, damages to be determined at trial; and

E. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 28, 2017

By: /s/ Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
Owen H. Laird [OL-6994]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
olaird@theharmanfirm.com

*Attorneys for Plaintiff*